UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MATRIX ESSENTIALS, INC.,

      Plaintiff,         **ORDER**
                   CV90-1070 (LDW) (WDW)
  -against-

QUALITY KING DISTRIBUTORS, INC.,
BERNARD NUSSDORF, GLENN NUSSDORF,
and STEPHEN NUSSDORF,
      Defendants,

RUTH NUSSDORF, PRO'S CHOICE BEAUTY
CARE, INC. and GSN TRUCKING CORP.,
      Non-Party Respondents
-------------------------------------------------------------X
**WALL, Magistrate Judge:**

  Before the court is a motion by Non-Party Respondent Pro's Choice Beauty Care to compel production of a document ("the Report") that plaintiff (L'Oreal) contends is protected by the work product privilege, to further compel production of all documents and other information related to the Report, and to extend the deposition of Charles Domroe. For the reasons set forth herein, the motion is granted in part and denied in part.

  The court finds that L'Oreal waived work product protection for the Report, and it must produce the Report and any other documents relating to the investigation that is the subject matter of the Report that were in L'Oreal's possession in April 2003, subject to the limitations discussed *infra*. Materials relating to the investigation generated after that date, even if related to the investigation, need not be produced, unless they were, like the Report, disclosed to the government. The court declines to continue Mr. Domroe's deposition at this time, and no sanctions are awarded.

## BACKGROUND

Familiarity with the facts underlying this action is assumed. Pro's Choice seeks an order compelling the plaintiff to produce "the Report," a document numbered P00243-248 that the plaintiff previously disclosed to various governmental entities, allegedly in an effort to determine if any "criminal processes could be applied that would help . . . the pending civil lawsuit." See 12/23/06 Cizmarik Letter at 1 (quoting Domroe Dep. at 55:2-16, 195:23-196:5; 217:16-25). The plaintiff explains the background of the Report as follows:

> About a year before the bringing of the present contempt proceedings and the companion state court ARTec case, L'Oreal referred its evidence of defendants' violations of the Matrix Consent Judgment and ARTec Settlement Agreement to the FBI and U.S. Attorneys Office. Although it has produced <u>all</u> of the underlying evidence to defendants, L'Oreal has asserted attorney work product immunity in withholding certain documents that L'Oreal created to summarize and analyze its pre-filing investigations and evidence in preparation for litigation, including one such document, P00243-248, that L'Oreal also provided to federal law enforcement authorities for their related criminal investigations of defendants (the "Report") . . .

1/3/06 Canova Letter[1] at 1 (underscore in original).

Pro's Choice argues that L'Oreal's production of the document waived any work product protection to which it otherwise would have been entitled, a claim with which L'Oreal disagrees.

## DISCUSSION

The work product doctrine protects materials produced by an attorney for, or in anticipation of, litigation. *See* Fed. R. Civ. P. 26(b)(3); *United States v. Adlman*, 134 F.3d 1194, 1197-98 (2d Cir. 1998). The court accepts, for the purposes of this motion, that the document at issue is work product. "The logic behind the work product doctrine is that opposing counsel

---

[1]The court notes that, in future, letters with much of the legal argument inserted in footnotes to force compliance with the three page rule will be rejected. If three pages are insufficient for the necessary argument, the parties should seek permission to file a longer letter.

should not enjoy free access to an attorney's thought processes." *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 234 (2d Cir. 1993). The issue of work product waiver in situations where disclosure was made to a governmental authority has frequently arisen. *See In re Natural Gas Commodity Litigation,* 2005 WL 1457666, *4-7 (S.D.N.Y. June 21, 2005) (citing cases).

"Unlike waiver of the attorney-client privilege, work product is not automatically waived once produced to a third party. Rather it is waived when its production to another is inconsistent with the protection." *Spanierman Gallery Profit Sharing Plan v. Merritt,* 2003 WL 22909160 *2 (S.D.N.Y. Dec. 9, 2003) (citing *GAF Corp. v. Eastman Kodak Co.,* 85 F.R.D. 46, 51 (S.D.N.Y. 1979)). Consistent with these principles, it has been held that "'[t]he work product doctrine is waived when documents are voluntarily shared with an adversary . . .'" *Fullerton v. Prudential Ins. Co.,* 194 F.R.D. 100, 103 (S.D.N.Y. 2000) (quoting *Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.,* 125 F.R.D. 578, 587 (N.D.N.Y. 1989)). It is not, however, necessary that the disclosure be made to an actual adversary. *Bank of America, N.A. v. Terra Nova Ins. Co.,* 212 F.R.D.166, 170 (S.D.N.Y. 2002). Waivers have been found where the governmental agency was a potential adversary to the disclosing party. *See Bank of America*, 212 F.R.D. at 170 (citing cases).

Courts also look to whether the disclosure was made in a manner that is "'inconsistent with maintaining secrecy against opponents.'" *Id.* (quoting *United States v. AT&T,* 642 F.2d 1285, 1299 (D.C. Cir. 1980)). Thus, a disclosure to a non-adversarial governmental agency that substantially or materially increases the likelihood that an adversary will obtain the information has been found to waive the protection. *See, e.g., GAF,* 85 F.R.D. at 51-52; *see also Bank of America,* 212 F.R.D. at 170 and cases cited therein.

3

In making a determination of the increased risk of an adversary's obtaining the work product, courts in this Circuit have looked to whether the material was disclosed under an express agreement or requirement that it be kept confidential.  *See, e.g., Steinhardt,* 9 F.3d at 236 (declining to adopt a  per se waiver rule, which would fail to anticipate situations in which government agency and  "disclosing party have entered into an explicit agreement that the [agency] will maintain the confidentiality of the disclosed materials." (citing *in re Sealed Case,* 676 F.2d 793, 817 (D.C. Cir. 1982); *see also GAF,* 85 F.R.D. at 52 (no waiver found where, even if adversarial relationship between government and disclosing party had existed, there was an explicit statutory prohibition on the government's revelation of GAF's documents without GAF's permission); *In re natural Gas,* 2005 WL 1457666 at *8-9 (finding no waiver where confidentiality and non-waiver agreements existed, despite majority view in other Circuits that such agreements would not necessarily insulate disclosing party from finding of waiver).  Courts in other Circuits, however, have found waiver even where a confidentiality agreement did exist. *See in re Natural Gas*, 2005 WL 1457666 at *7-8 (citing cases).

Courts have also looked to whether the disclosure of information to the government was to assist in litigation against a common opponent, or whether a common interest existed.  *See Bank of America,* 212 F.R.D. at 171; *see also Spanierman,* 2003 WL 22909160 at *5; Information Resources, Inc. v. Dun & Bradstreet,* 999 F. Supp. 591, 591-92 (S.D.N.Y. 1998).  A distinct category of cases in which courts have considered waiver are those in which the disclosure of information to governmental authorities was made in the hope that the government will "attack" the disclosing party's adversary.  *Information Resources,* 999 F. Supp. at 592.  Such disclosure, it has been held, "cannot be said to be done 'in the pursuit of trial preparation,' and

4

"disclosure in such a situation results in a waiver of the work product protection." *Bank of America,* 212 F.R.D. at 172-73 (quoting *AT&T,* 642 F.2d at 1299); *see also Information Resources, Inc.,* 999 F. Supp. at 593 (S.D.N.Y. 1998) (protection waived where materials were submitted voluntarily to stimulate official action beneficial to discloser); *Three Crown Ltd. P'ship v. Salomon Bros., Inc.,* 1993 U.S. Dist. LEXIS 9995 at *2 (S.D.N.Y. July 21, 1993) (protection waived where work product materials used to "persuade the government to take action against a party and thereby gain, if possible, the advantage of collateral estoppel in later civil litigation.")

Here, the disclosure was voluntary, but there was no adversarial or potentially adversarial relationship between L'Oreal and the government agencies. Thus, the relevant questions are whether the disclosure was made to gain an advantage against an adversary, whether the disclosure heightened the risk of disclosure to that adversary, and whether some common interest existed that would prevent a finding of waiver.

At his deposition, Charles Domroe, L'Oreal's 30(b)(6) witness, was asked whether L'Oreal involved federal authorities in the Matrix and ARTec diversion investigation to "facilitate an eventual civil case against Quality King." Domroe Dep. Tr., 12/23/05 Cizmarik Letter, Ex. A, 55:3-6. Domroe answered that the "point of involving the federal authorities was to seek federal prosecution. It was one aspect that would be very beneficial to us, and that was if such warrants were executed, that would at least basically guarantee that the defendant wouldn't have an opportunity to dispose of or move or hide computer records or hard copy records of Matrix and Artec product." *Id.* 55:8-16. He acknowledged that at the end of a federal criminal investigation, L'Oreal would commence a civil lawsuit against Quality King and Pro's Choice,

5

and testified that preservation of evidence for use in the civil lawsuit was one of L'Oreal's prime interests in disclosing the information to the federal authorities. *Id.* 58:11-59:4.

This rationale would seem to fall squarely into the category of cases in which the disclosure of information to government authorities in the hope of gaining an advantage over an adversary waived work product protection. L'Oreal argues that there is no "per se rule" in this Circuit that such disclosure automatically results in waiver, citing to *In re Steinhardt*. It is true that the Second Circuit, in *Steinhardt*, warned against a per se rule, but it did so in the context of a concern for the steps that might be taken to preserve confidentiality, suggesting that a rigid rule would fail to anticipate situations in which the governmental authority and the disclosing party have entered into "an explicit agreement" that the government would maintain the confidentiality of the disclosed materials. 9 F.3d at 236. The court thus looks to the disclosure in the context of L'Oreal's concern with maintaining its confidentiality.

There is no suggestion here that any formal agreement was reached between L'Oreal and the agencies that the disclosure would be held in confidence. Generally, when material is disclosed to a law enforcement agency without any agreement regarding confidentiality, "there is a strong potential that the material may ultimately become public and thus available to an adversary." *Bank of America,* 212 F.R.D. at 173 (citing cases). L'Oreal argues that Charles Domroe, as a former Special Agent with the FBI, "well understood the FBI's policy of maintaining L'Oreal's evidence in confidence, and not disclose it to any other party, even one involved in subsequent civil litigation." 1/3/06 Canova Letter at 2 (citing Domroe Dep. Tr. 117:24-119:11). Even accepting L'Oreal's interpretation of Mr. Domroe's deposition testimony as stating such an "understanding," it does not rise to the level of preservation of confidentiality

that has defeated a finding of waiver in other cases.

L'Oreal argues that the disclosure did not substantially increase the opportunity for a potential adversary to obtain the information, but the court does not agree. As explained at some length in *Bank of America,* there are several ways in which material disclosed to the government is likely to be revealed. For example, it may be used at trial, disclosed to a criminal defendant because it consists of the statement of a trial witness, required to be disclosed because it contains exculpatory material, used by the government outside a trial setting to induce cooperation by a witness, or subject to release under federal and/or state freedom of information laws. 212 F.R.D. at 173. All of those possibilities existed here.

L'Oreal further argues that it shared a common interest with the government agencies, another factor that courts might look to in conducting a waiver analysis. In *Steinhardt*, the Second Circuit recognized that the disclosing party and the government "might share a common interest in developing legal theories and analyzing information." 9 F.3d at 236 (citing *In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982)). In support of this theory, L'Oreal argues that the disclosure in April 2003 was prompted by L'Oreal's outside counsel's contact with the FBI in September 2002. Based on that contact, L'Oreal asserts, "the FBI engaged various other agencies to meet with L'Oreal, demonstrating a clear interest in this matter before the Report was ever disclosed seven months later in April 2003. (Domroe Tr. 29:14-31:5; 44:7-12)). 1/3/06 Canova Letter at 2. L'Oreal further states that L'Oreal's primary interest in its criminal referral was to prosecute criminal violations, arising from defendants' criminal contempt of the federal Matrix Consent Judgment - an interest commonly shared with the FBI and U.S. Attorney's Office." *Id.*

*Steinhardt* did not outline the circumstances under which a common interest between government authorities and a private party might overcome a finding of waiver, and this court finds that L'Oreal has not established a common interest that overcomes the principle that voluntary disclosure to government authorities, without a confidentiality agreement, in hopes of initiating a criminal proceeding against an adversary, waives work product protection, for the reasons discussed *supra*. L'Oreal has not cited, and the court has not found, a case in which the "common interest" factor overcame the "disclosure was made to gain an advantage over the adversary" factor.

*Steinhardt* specifically mentions a "common interest in developing legal theories and analyzing information." Here, there is no showing of commonality in the legal theories in the criminal and civil actions, and any general common interest that L'Oreal and the authorities may have shared in analyzing the information disclosed does not, under these circumstances, overcome the conclusion that the privilege was waived, inasmuch as "'the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials.'" *Bank of America,* 212 F.3d at 173 (quoting *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1431 (3d Cir. 1991)).

Thus, the work product protection adhering to the Report was waived by its disclosure to government agencies, and a copy of the Report must be produced. Pro's Choice argues that the scope of the waiver goes beyond the Report, and further seeks an order compelling the production of "all documents relating to plaintiffs' investigation of Quality King and Pro's Choice that were in the possession of plaintiffs as of the April 3 and 29, 2003 meetings because the specific details of such investigation were shared with the federal authorities." 12/23/05

8

Cizmarik Letter at 1.

The Second Circuit has not expressly ruled on the scope of a waiver of work product protection. Some courts have found a broad waiver, and others have limited the waiver to the specific materials disclosed. *See Bank of America*, 212 F.R.D. at 174 (citing cases). As noted by the court in *Fullerton,* the rule against selective disclosure of work product materials, articulated in *Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.,* 125 F.R.D. 578, 587 (S.D.N.Y. 1989) and in *United States v. Nobles,* 422 U.S. 225, 239-40 (1975), does not rise to the level of "waive work product as to some matters and you've waived as to all." *Fullerton,* 194 F.R.D. at 104. Instead, a waiver of work product by disclosure "waives the privilege only as to matter covered in the waived documents." *Id.* (citing *Chubb Integrated Sys., Ltd. v. National Bank of Washington,* 103 F.R.D. 52, 63 n.3 (D. D.C. 1984) (citing cases)).

Here, the Report, submitted by L'Oreal for in camera review, is captioned "Quality King Project: Investigation of Non-Compliance with Permanent Injunction." As the title suggests, the Report summarizes L'Oreal's investigation into alleged violations of the underlying consent agreement by Quality King and Pro's Choice, and the steps that L'Oreal took to confirm its suspicions as to those violations. Pro's Choice argues that, given the broad topic of the Report, "the waiver applies not only to the disclosed document itself . . . but also to all facts which were disclosed in the oral presentation to the government as well as all documents underlying plaintiff's investigation." 12/23/05 Cizmarik Letter at 2-3 (citing *Bank of America*).

Applying the *Nobles/Chubb* rule, the court finds that the waiver extends to the "matter" covered in the Report, that is, the investigation, and that Pro's Choice is entitled to disclosure of all of the facts disclosed in the oral presentation to the government and the documents relating to

9

the presentation that were in L'Oreal's (or Matrix's) possession in April 2003, along with any other documents actually produced to the government. Materials generated after that date, even if related to the investigation, need not be produced, unless they were also disclosed, either orally or in hard copy, as part of a continuing cooperation between L'Oreal and the authorities pertaining to the investigation. *See Bank of America,* 212 F.R.D. at 175.

Pro's Choice specifically calls for the production of the "notes taken by any of plaintiffs' attorneys or representatives at the April 3 and April 29 meetings or at any interviews with potential witnesses, etc., prior to April 29." Cizmarik Letter at 3. The court finds, however, that unless such notes were disclosed to the government, either orally or in hard copy, they represent opinion product and need not be produced.

Much of the required production may have already been done. L'Oreal states that it has produced "more than 6000 pages of documents, including <u>all</u> of the underlying, factual documents regarding its 2002-2003 investigation of Quality King and Pro's Choice, such as receipts, faxes, audio tapes, transcripts invoices, packaging, packing slips, cancelled checks, and even private investigators's reports, all directly related to the purchase and sale of Matrix and ARTec products by defendants (and respondents)." Canova Letter at 3. L'Oreal specifically states that "all such underlying, primary documents that L'Oreal provided to federal law enforcement have already been produced in this case." *Id.*

Although L'Oreal has produced relevant fact discovery, it argues that the movant is not entitled to "L'Oreal's work product compilation and analysis of those facts, or to L'Oreal's litigation strategy." Canova Letter at 3. To the extent that such "opinion" work product was not disclosed to the government, the court agrees. *See Bank of America,* 2112 F.R.D. at 175; *see also*

Fed. R. Civ. P. 26(b)(3) (enjoining courts to "protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . "). It is not possible to determine, from the record before me, whether L'Oreal revealed opinion work product to the government. If it did, then work protection for that opinion work product is waived. If it did not, then it is not. If any unproduced documents exist that contain both facts relevant to the investigation and opinion work product that was not divulged, the parts of the documents containing such protected opinion or analysis may be redacted, with copies to the court for in camera review.

Finally, Pro's Choice asks for the reopening of the 30(b)(6) deposition of Charles Domroe after it has had an opportunity to analyze any documents that plaintiffs are ordered to produce. The court will not now order a continuation of the Domroe deposition. As noted *supra*, the plaintiff claims that the Report contains no facts that Pro's Choice did not already know when Mr. Domroe was deposed the first time, and he has already been questioned about the investigation and the involvement of the government. Assuming that is true, there is no reason to depose him further. If, after Pro's Choice has a chance to review the Report, or if L'Oreal redacts any documents that it produces in response to this order (if indeed any documents remain to be produced) and Pro's Choice wants to renew the application, with reference to specific areas of inquiry for a renewed deposition, it may do so.

L'Oreal shall produce the Report within five business days of the date of this order, along with any other responsive documents not previously produced, unless it appeals this order to Judge Wexler. If it does appeal and the appeal is unsuccesful, it must produce the relevant documents within two business days of Judge Wexler's ruling, or at whatever time Judge Wexler

11

orders.

The court declines to award sanctions on this motion.

Dated: Central Islip, New York  **SO ORDERED:**
January 12, 2006

      /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge