UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
MATRIX ESSENTIALS,

                MEMORANDUM AND ORDER

        Plaintiff,                CV 90-1070

-against-                  (Wexler, J.)

QUALITY KING DISTRIBUTORS, INC.,
BERNARD NUSSDORF, GLEN
NUSSDORF, and STEPHEN NUSSDORF,

        Defendants.
----------------------------------------------------X

APPEARANCES:

    WEIL, GOTSHAL & MANGES LLP
    BY: STEVEN ALAN REISS, ESQ.
        GREGORY SILBERT, ESQ.
        ARTHUR C. D'ANDREA, ESQ.
    Attorneys for Plaintiff
    767 Fifth Avenue
    New York, New York 10153

    BRACKEN, MARGOLIN & GOUVIS, LLP
    BY: LINDA MARGOLIN, ESQ.
       JEFFREY D. POWELL, ESQ.
    Attorneys for Defendant Quality King Distributors, Inc.
    One Suffolk Square, Suite 300
    1601 Veterans Memorial Highway
    Islandia, New York 11749-1543

    EDWARDS & ANGELL, LLP
    BY: ANTHONY J. VIOLA, ESQ.
       ANDRE K. CIZMARIK, ESQ.
    Attorneys for Pro's Choice and Ruth Nussdorf
    750 Lexington Avenue
    New York, New York 10022

WEXLER, District Judge

This is a case that was most recently before this court in the context of a Rule 60(b) motion to consider whether a consent injunction, entered in 1990, should be set aside. A non-jury trial was held, and the motion was granted. On appeal, the Second Circuit affirmed the order setting aside the injunction, but remanded the case for a determination as to whether the order should have retroactive application, and issues related thereto.

The court describes below the procedural background of this matter, its prior order, and its ruling with respect to the issues on remand.

I. Procedural Background

A. Commencement of the Action and the 1990 Injunction

The complaint in this action was commenced by Matrix Essentials, Inc. ("Matrix"), by way of order to show cause, on March 28, 1990. Although Matrix was the company that marketed products under the Matrix name in 1990, those products have been marketed, since 2000, by related corporate entities that this court will refer to only as "L'Oreal." It is L'Oreal that prosecutes this action as the current Plaintiff. Named as Defendants in 1990 were Quality King Distributors, Inc., ("Quality King"), as well as the company's then-president, Bernard Nussdorf and his sons, Glenn and Stephen Nussdorf (the "Quality King Defendants"). Two months after the 1990 filing of the complaint, the parties entered into a permanent injunction and consent order, and the case was closed. The parties' agreement was "so ordered" by this court on May 29, 1990 (the "1990 Injunction"). The court retained jurisdiction over this matter to control, enforce or implement the injunction.

Negotiation of the 1990 Injunction followed 1989 litigation in the State of Florida among the then-parties to this action (the "Florida Action"). The Florida Action alleged that the

2

Defendants therein were illegally diverting Matrix "professional use" hair care products outside of the allowed chain of distribution. That action culminated in a consent decree pursuant to which Matrix agreed to buy back its products from Quality King. It was the allegation that the consent decree in the Florida Action was violated, that precipitated commencement of this action in 1990.

The terms of the 1990 Injunction are broad. It bars permanently the Quality King Defendants as well as their employees, successors and assigns, from, <u>inter alia</u>, purchasing, acquiring, distributing, selling or offering for sale, any product manufactured or distributed by Matrix, or bearing the Matrix name.

B. <u>The 2004 Proceedings</u>

On June 10, 2004, fourteen years after entry of the 1990 Injunction, L'Oreal, acting as successor in interest, and beneficiary of the terms of the 1990 Injunction with respect to the sale of its Matrix branded products, presented this court with an <u>ex parte</u> order to show cause. L'Oreal alleged that the 1990 Injunction was being violated by Defendants, and sought an order of contempt. In addition to naming the Quality King Defendants, L'Oreal sought to hold additional non-parties Ruth Nussdorf, Pro's Choice Beauty Care and GSN Trucking Corp. (collectively the "Pro's Choice Parties") bound by the 1990 Injunction.

This court signed the June 10, 2004 order to show cause, and ordered Defendants and Non-Party Respondents to appear before the court on June 16, 2004 (the "June 10 Order"). The June 10 Order restrained the Quality King Defendants, and the Pro's Choice Parties from violating the 1990 Injunction, and further restrained them from taking specific action with respect to certain products and business records.

In an order of the same date as the parties' June 16, 2004 appearance, this court lifted the

injunction imposed by the June 10 Order with respect to the Pro's Choice Parties. Reasoning that these parties were not named in the complaint herein, this court held that no injunction could be enforced against them. The court noted that L'Oreal was free to commence a new action against the Pro's Choice Parties, or to continue to press any legal theory deemed viable in an effort to prove the Pro's Choice Parties bound by the terms of the 1990 Injunction. L'Oreal did not commence a new proceeding against the Pro's Choice Parties, but instead, pressed its request to hold the original Defendants, as well as the Pro's Choice Parties, in contempt of the 1990 Injunction.

At the close of discovery, the Quality King Defendants and the Pro's Choice Parties moved, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)"), to vacate the 1990 Injunction. After denying cross-motions for summary judgment, the court bifurcated the trial of the Rule 60(b) motion as follows. The first phase of the trial assumed, for the purpose of expediting that phase, the truth of two issues in dispute: (1) that L'Oreal had standing, as the successor in interest to Matrix, to enforce the terms of the 1990 Injunction, and (2) that the Pro's Choice Parties, although not named in the original injunction, were bound thereto. The sole issues to be decided at phase one of the trial were: (1) Defendants' Rule 60(b) motion to vacate the 1990 Injunction and, (2) whether L'Oreal's claim was barred by laches.

C. The Trial and Appeal

The court held a non-jury trial and, on November 14, 2007, issued its Findings of Fact and Conclusions of Law. See Matrix Essentials v. Quality King Distributors, Inc., 522 F. Supp.2d 470 (E.D.N.Y. 2007) ("Matrix I"). Holding that it was no longer equitable for the 1990 Injunction to have prospective application, this court granted the Rule 60(b) motion to vacate. Matrix I, 522 F. Supp.2d at 479. After setting aside the 1990 Injunction, Matrix I concluded that

it was unnecessary to decide the second issue that was tried in phase one of the trial, i.e., whether L'Oreal's action was barred by laches. The court also held that it was unnecessary to decide the issues in dispute, but deemed to be true for the purpose of phase one, i.e., whether L'Oreal had standing to enforce the terms of the 1990 Injunction, and whether Pro's Choice would have been bound by the terms of the 1990 Injunction. Accordingly, the court closed the file in the case.

On appeal, the Second Circuit affirmed the grant of the Rule 60(b) motion, and this court's decision to prospectively vacate the 1990 Injunction. Matrix Essentials, Inc. v. Quality King Distributors, Inc., 2009 WL 1010029 (2d Cir. 2009). The case was remanded, however, for consideration of damages, if any, owed to L'Oreal as a result of any violation of the 1990 Injunction that occurred prior to the date of the decision vacating that injunction. In apparent recognition that the issue of damages would change if the 1990 Injunction were retroactively vacated, the Second Circuit noted that retroactive vacatur can be proper in an appropriate case. Matrix, 2009 WL 1010029 *3. Retroactive termination, however, required some explanation as to why such relief was appropriate. Id. Finding no such discussion, the Court of Appeals remanded for further consideration in light of the issues raised.

After remand, this court held a conference to determine further proceedings. It was agreed that the parties would brief the issues of whether retroactive vacatur of the 1990 Injunction was appropriate, as well as the availability of equitable defenses to L'Oreal's claim for damages. The parties were given the opportunity to submit memoranda of law and exhibits on the issues of retroactive vacatur and laches, and to take positions as to whether additional proceedings were necessary. The court turns to consider those submissions as well as the trial transcript and exhibits, and this court's Findings of Fact and Conclusions of Law in Matrix I

## DISCUSSION

I.   Standards Applied and Retroactive Vacatur

In Matrix I, this court applied the "significant change in circumstances" standard when considering whether the 1990 Injunction should be vacated. See Matrix I, 522 F. Supp.2d at 478, citing, Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 383 (1992). The court further noted that Rule 60(b) "confers broad jurisdiction on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable power to do justice in a particular case." Id., citing, Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986).

L'Oreal's appeal to the Second Circuit argued that the standard in Rufo should be limited to the factual context of that case, and should not apply in this matter because the present dispute has no affect on the public at large. The Second Circuit noted that enforcement of the 1990 Injunction could, indeed, effect competition in the relevant marketplace, and consequently on prices paid by consumers. It was therefore noted that this case could have a broad public impact making application of the Rufo standard appropriate. Therefore, L'Oreal's specific argument against application of Rufo in this matter was rejected. The Second Circuit further held that any other argument that might have been made against application of Rufo was not raised in L'Oreal's opening papers, and was therefore waived.

As to retroactive vacatur, the Second Circuit indicated that such orders are not the "ordinary" practice, and required a discussion of the separate factors supporting such a ruling. With the Second Circuit's ruling in mind, the court turns to consider whether retroactive vacatur is appropriate under the particular circumstances of this case.

II.   Retroactive Vacatur to 2002 is Appropriate

The evidence at trial established that after entry of the 1990 Injunction, and continuing until approximately 2002, neither Quality King nor any related entity, engaged in the sale or

distribution of products marketed under the Matrix name. See Matrix I, 522 F. Supp.2d at 473 ("[a]fter entry of the 1990 Injunction and continuing until approximately 2002, neither Quality King nor any related entity engaged in the sale or distribution of products marketed under the Matrix name"). Because there was no evidence presented of any violation of the 1990 Injunction until, at the earliest 2002, L'Oreal could not have suffered any damage during that time period. The court therefore considers only whether retroactive vacatur is appropriate to 2002, and not 2000 – the year that L'Oreal began marketing products under the Matrix name .

As to the years 2002 to the date of the grant of the Rule 60(b) motion in 2007, the evidence at trial established that the nature of the diversion market during that time period was vastly different from the market in 1990. When the 1990 Injunction was agreed to, Matrix took the issue of diversion seriously. The company took aggressive steps to protect the professional nature of its product. It vigorously pursued, and sought punishment of those who sold Matrix branded products outside of the professional chain of distribution. Diversion was viewed as having the potential to harm the value of the Matrix name to the professional community, and the company took aggressive steps to stop the practice.

In direct contrast, during the time period of 2002-2007, there was widespread, growing, and completely unchecked diversion of Matrix products outside of the so-called "professional" chain of distribution. During this time period, L'Oreal took no steps to end diversion – and it is not surprising why. The profits reaped by L'Oreal during this time period were enormous and unprecedented. As stated in Matrix I, the evidence at trial established that the number of Matrix units sold in the diversion market grew from approximately 1.6 million units in 2002, to approximately 6.4 million units in 2006. Matrix I, 522 F. Supp.2d at 474. These units corresponded to sales of approximately $18.4 million in 2002, which grew to over $90 million in

7

2006. Id. While L'Oreal took the position at trial that it was serious about ending diversion of its "professional" Matrix product line, the facts presented painted a completely different picture. In fact, L'Oreal did nothing to end diversion during the time period at issue, and was instead pleased to simply reap the increasing profits. When L'Oreal began to press its case for enforcement of the 1990 Injunction against the parties here, it appears to have been motivated more by a desire to punish Defendants, and the Pro-Choice parties than to further what might have been a legitimate goal of protecting the professional nature of its product. The reality of the marketplace makes L'Oreal's "professional distribution only" argument ring hollow. Far from suffering any damage from diversion, L'Oreal's profits soared as a result of the practice.

The dramatic change in the diversion market from 1990 (when the consent decree was issued), to the period for which L'Oreal seeks damages (2002-2007), is sufficient, in the court's view, to justify retroactive vacatur. Other factors, however, also support the court's conclusion. As noted in Matrix I, the re-sale of untainted product is completely lawful, as it can support neither a claim of unfair competition nor trademark infringement. See Matrix I, 522 F. Supp.2d at 478. There was never an allegation that product sold during the time period of 2002-2007 was in any way tainted or mislabeled. Accordingly, there is no question but that the conduct engaged in by Defendants, and the Pro's Choice Parties was, in the absence of the 1990 Injunction completely lawful.

Finally, the fact that the 1990 Injunction was entered into upon consent of the parties, and not after any hearing or findings by the court, weighs in favor of retroactive vacatur. If L'Oreal were to commence a new action today aimed at challenging the sale of genuine product by a re-seller, and that action was subject to full consideration by the court, L'Oreal would undoubtedly lose. It is likely that this state of the law is the probable reason for L'Oreal's litigation decision

to seek enforcement of the 1990 Injunction against the Pro's Choice Parties in lieu of commencing a new action against these non-parties to the 1990 Injunction.

In sum, the court holds that there was sufficient evidence presented at trial to support retroactive vacatur of the 1990 Injunction for the period of 2002-2007. The diversion market had changed dramatically from the time the Injunction was agreed upon. L'Oreal did absolutely nothing to stop diversion. To the contrary, it profited greatly from the practice. Finally, the fact that the re-sale of untainted product is completely legal, and the effect on consumer price due to the presence of Defendants in the market place, are public policy considerations supporting retroactive vacatur.

## CONCLUSION

The court hereby orders that the 1990 Injunction be retroactively vacated to 2002, when the first proven diversion of Matrix products by the Pro's Choice Parties took place. In light of the fact that this ruling vitiates any claim for damages, it is unnecessary to consider any other issue remanded to this court. The Clerk of the Court is directed to close the file in this case.
SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
November 13, 2009